# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDWARD T. JOYCE & ASSOCIATES, P.C., | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 13 CV 2475 |
| v. | ) ) Hon. Charles R. Norgle ) |
| PROFESSIONALS DIRECT INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

In this declaratory judgment action, Plaintiff Edward T. Joyce & Associates, P.C. (the "Joyce Firm") sues Defendant Professionals Direct Insurance Company ("PDIC"), seeking a declaration that under the terms of the Lawyers Professional Liability Policy issued to the Joyce Firm, PDIC is required to indemnify the Joyce Firm for a $628,527.47 award (the "Final Award") entered against it, post-judgment interest, and for attorneys' fees and costs incurred by the Joyce Firm following entry of the Final Award. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, summary judgment is granted in favor of PDIC and against the Joyce Firm.

## I. BACKGROUND

### A. Facts[1]

PDIC issued the Illinois law firm, the Joyce Firm, the Lawyers Professional Liability Policy, No. 10IL10098600601-LPL, for the policy period of April 6, 2010 to April 6, 2011. As

---

[1] The Court takes the undisputed facts from the parties' statement of material facts and supporting evidentiary materials. Although the Court "need consider only the cited materials," it "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

relevant here, the policy, as amended by the ProDirect Select® State Amendatory Endorsement – Illinois, states:

### SECTION A. COVERAGE

### 1. WHAT THIS POLICY INSURES:

Subject to the terms, conditions, exclusions and limitations of this **policy, we** will pay on **your** behalf all sums which **you** become legally obligated to pay as **damages** because of any **claim** or **claims,** first made against **you.** The **claim** must first be made and reported to **us** during the **policy period** or any extended reporting period, if applicable, and must arise from any act, error or omission to which this **policy** applies. **Our** obligation to pay **damages** on **your** behalf is limited to the limit of liability that remains after **we** deduct the deductible amount shown in the Declarations, provided all of the following are true.

a) The **claim** must arise out of the rendering of or the failure to render **professional services**.

b) The **claim must** be caused by an **Insured** under this policy or by any person for whose acts, errors or omission you are legally liable.

c) the act, error or omission must have first occurred on or after the applicable **Retroactive Date(s)**.

d) You had no knowledge of facts which could have reasonably been expected to result in the **claim,** or any knowledge of the **claim,** prior to the effective date of this policy.

PDIC's Local Rule 56.1(a)(3) Statement of Material Fact ¶ 4. The term "claim" is defined as follows:

a) a demand or suit for money or services **you** receive, including any arbitration proceedings to which **you** are required to submit or to which **you** have submitted with **our** consent; or

b) when **you** first receive oral or written information or have knowledge of specific circumstance involving a particular person or entity which could reasonably be expected to result in a demand or suit for money or services; or

c) when **you** first receive oral or written notification of any **disciplinary proceedings.**

2

Id. ¶ 5. The term "damages" is defined as "monetary judgments, awards or settlements unless otherwise excluded." Id. ¶ 6. "Professional services" includes the following:

> a) services you render in a lawyer-client relationship as a lawyer, mediator, arbitrator, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any similar fiduciary capacity
>
> b) services (including title opinions or title certifications) you perform for others for a fee as a title insurance agent, title abstractor, title searcher, escrow agent, or closing agent;
>
> c) services you render as a lawyer for others as a mediator or arbitrator, speaker or author of legal treatises.
>
> d) your activities as a member of a formal accreditation, ethics, peer review, licensing board, standards review, bar association or similar professional board or committee.

Id. ¶ 7. The policy includes certain exclusions, including Exclusion (o), which provides that the policy does not apply to: "o) any **claim** for fines, sanctions, penalties, punitive **damages** or any **damages** resulting from the multiplication of compensatory **damages**." Id. ¶ 10. Exclusion (p) provides that the policy does not apply to: "p) any **claim** for legal fees, costs or disbursements paid or owed to you." Id. ¶ 11.

On January 21, 2011, Walter Duemer filed an action on behalf of over one hundred individuals and entities that were part of the FFR Group (the "Duemer claimants") against the Joyce Firm. In the arbitration matter, the Duemer claimants sought relief for legal fees wrongfully collected under a 2002 Contingency Fee Agreement (the "2002 Retainer Agreement),[2] alleging claims for breach of fiduciary duty, conversion, and breach of contract.

---

[2] The Duemer claimants entered into a contingency fee retainer agreement with the Joyce Firm, wherein they agreed to pay the Joyce Firm 25% of any award from claims against various entities, and a $200,000 non-refundable retainer which was to be applied to any contingency award. The agreement also required the Duemer claimants to contribute towards litigation costs up to $150,000; any excess amount would be credited back against the contingent fee.

3

The Duemer claimants had retained the Joyce Firm to represent them in claims against various entities, including Deloitte & Touche, Jeffries Company, EPS Solutions Corporation and Enterprises Profit Solutions Corporation (collectively "EPS"). The Duemer claimants alleged that although they had obtained a settlement recovery from certain of the entities, EPS was insolvent. The Duemer claimants further alleged that the Joyce Firm advised them that to recover from EPS, they should obtain an arbitration award against EPS and then proceed to collect the judgment against EPS's insurers. The Duemer claimants alleged that after they obtained the award and suit was filed against EPS's insurers, the Joyce Firm hired counsel in San Francisco (Morgan Lewis/Reed Smith) to handle the litigation. According to the Duemer claimants, the Joyce Firm notified them that they would be responsible for additional attorneys' fees and costs incurred for local counsel to pursue the coverage action, additional hourly fees of the Joyce Firm, and additional litigation costs. The Duemer claimants asserted that the San Francisco action was part of the original contingency fee agreement, and they intended to receive a reimbursement of all excess litigation proceedings at the successful conclusion of the litigation against EPS's insurers.

The Duemer claimants alleged that although they authorized the Joyce Firm to settle with EPS' insurers for $9,000,000, the Joyce Firm instead settled for $8,600,000 and agreed to reduce its hourly fees by $400,000. When the Joyce Firm obtained the settlement funds, it applied both the 2002 Retainer Agreement and a new fee agreement by deducting the hourly fees incurred by the Joyce Firm, deducting Morgan Lewis/Reed Smith's fees and expenses as "litigation costs," and deducting a 25% contingent fee.

The procedural history of the underlying litigation is well documented by the Illinois Appellate Court as follows.

4

¶ 12 III. Arbitration Proceedings

¶ 13 In their request for relief, the plaintiffs claimed that the defendant collected legal fees under the 2002 retainer agreement to which it was not entitled. They alleged causes of action for breach of fiduciary duty, conversion and breach of contract and requested attorney fees and costs incurred in pursuing their claims against the defendant. In its answer to the request for relief, the defendant denied the claims and alleged the affirmative defenses of performance of an oral retainer agreement, waiver and equitable estoppel. The defendant also filed a counterclaim asserting a claim for *quantum meruit*. Retired Justice Robert E. Rose (arbitrator Rose) was chosen to arbitrate the dispute. Over a three-day period in May 2011, arbitrator Rose conducted an evidentiary hearing. The evidence included testimony by eight witnesses and exhibits submitted by the parties. At the close of the evidentiary hearing, the parties submitted written closing arguments.

¶ 14 A. The Interim Award

¶ 15 On July 8, 2011, arbitrator Rose issued his interim award. Based on the evidence from the hearing, he made findings of fact and conclusions of law as set forth below.

¶ 16 Arbitrator Rose found that the pursuit of a bad-faith insurance coverage claim was not contemplated by the parties under the 2002 retainer agreement. In an August 3, 2007 memorandum, the defendant advised the plaintiffs that once the final order was issued in the EPS arbitration case, "'we have to begin collection efforts against EPS's insurers. Toward that end, we have already retained insurance coverage experts on our clients' behalf to lead us through the process of fighting every coverage challenge the insurers may assert.'" In a conference call on August 9, 2007, the defendant explained that coverage counsel had been retained for the plaintiffs to assist in recovering from EPS's insurers. Several of the plaintiffs did not recall that the defendant explained that it would be assisting coverage counsel and the terms of its assistance. The parties stipulated that some but not all the plaintiffs participated in the conference call. On September 25, 2007, the law firm of Morgan Lewis filed suit on behalf of the plaintiffs and against EPS's insurers.

¶ 17 Arbitrator Rose found that the plaintiffs were unaware that the defendant had previously retained the Morgan Lewis firm to assist it in the arbitration proceeding against EPS. It was not until the January 30, 2008 memorandum from the defendant that the plaintiffs were informed in writing that (1) the defendant considered it had fulfilled its obligations under the 2002 retainer agreement, (2) Morgan Lewis was the lead counsel in the suit against the EPS insurers and working on an hourly basis, and (3) the defendant was charging the plaintiffs a contingent hourly fee for its work performed in connection with the insurance case.

5

¶ 18 1. Undue Influence

¶ 19 Based on the evidence, arbitrator Rose determined that the defendant had not overcome the presumption of undue influence that arose when an attorney benefitted from the modification of an existing fee agreement. The August 3, 2007 memorandum did not mention that the defendant considered its obligations under the 2002 retainer agreement to be completed or that it would be charging the plaintiffs an hourly fee in addition to its 25% interest in all funds recovered. The memorandum never made it clear to the plaintiffs that a new fee agreement was being reached and did not advise the plaintiffs that they could seek independent legal advice as to the proposed retainer agreement. A considerable number of the plaintiffs did not participate in the August 9, 2007 conference call, and the defendant failed to establish by a presumption of the evidence the content of the conference call. While the January 30, 2008 memorandum did advise the plaintiffs that the defendant considered the 2002 retainer agreement terminated, that it would be charging a contingent hourly fee, and that Morgan Lewis would be the lead counsel, it did not state that the plaintiff should get independent counsel or that the defendant would be collecting its contingent fee and hourly billings, if the insurance suit was successful. As a result, the consideration charged for the new agreement was more than it would have been had the plaintiffs obtained independent counsel.

¶ 20 Arbitrator Rose found that the plaintiffs were presented with the terms of the 2007 retainer agreement on a "'take it or leave it'" basis and that there was no meeting of the minds as to the terms of the new retainer agreement. In addition, the new retainer agreement was not reduced to writing in violation of Rule 1.5(c) of the Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 1.5(c) (eff. Jan. 1, 2010)). He found that the January 30, 2008 memorandum was untimely and inadequate to serve as a written contingent fee request. Arbitrator Rose concluded that the new retainer agreement must be set aside.

¶ 21 2. The Defendant's Counterclaim

¶ 22 Arbitrator Rose found no evidence to support the defendant's claim that the plaintiffs had breached any of the agreements they entered into with the defendant or that there was a basis for a *quantum meruit* recovery. He also rejected the defendant's waiver and estoppel defenses, based on evidence that plaintiff Duemer and the defendant had agreed to conclude the litigation prior to addressing the costs and attorney fees issue.

¶ 23 3. Damages

¶ 24 a. Morgan Lewis Fees

¶ 25 While the 2002 retainer agreement no longer applied, and the new retainer agreement was voided by the defendant's actions, arbitrator Rose found that the plaintiffs needed counsel to represent them in the insurance litigation. Since the defendant's actions were not intentional, arbitrator Rose determined that the plaintiffs were responsible for 75% of the Morgan Lewis fees and, as a sanction, the defendant was responsible for the remaining 25% of the Morgan Lewis fees.

¶ 26 b. Contingent Hourly Fee

¶ 27 Arbitrator Rose noted that pursuant to case law, a retainer agreement resulting from undue influence was voidable, and the return of the fees paid under such an agreement was an appropriate sanction. He determined that such a sanction was appropriate in this case and ordered the defendant to pay $405,674.87 to the plaintiffs.

¶ 28 B. Post–Interim–Order Proceedings

¶ 29 The defendant filed a motion to adjust and reduce the damages amount. Under the interim award, the plaintiffs received a total of $555,802.02, consisting of a refund equal to 25% of the Morgan Lewis fees they had paid and the refund of the fees paid under the 2007 retainer agreement. The defendant maintained that the amount did not reflect the amount of the fees it actually collected from the plaintiffs. According to the defendant, the amount of contingent hourly fees actually paid to it by the plaintiffs was $210,007.94, not the $405,674.87 set forth in the interim award. The defendant also argued that because of a credit given to the plaintiffs, the defendant actually received only 15% rather than the 25% called for under the 2002 retainer agreement.

¶ 30 The defendant pointed out that in the interim order arbitrator Rose stated that his intention was to award the plaintiffs only those amounts they actually paid to the defendant and to require the defendant to pay a fair share of the costs of prosecuting the insurance coverage suit. Therefore, the defendant maintained that the award of $555,802.02 should be reduced to $300,084.

¶ 31 The plaintiffs filed a motion requesting the issuance of a final award. In addition, they sought an award of costs and requested that arbitrator Rose make findings of fact and conclusions of law on their conversion claim against the defendant.

¶ 32 C. Final Award

¶ 33 In the final award, arbitrator Rose denied the conversion claim based on the parties' agreement to resolve the fee calculation disagreement after the distribution of the proceeds was made and the fact that plaintiff Duemer did not state a specific amount to be placed in trust.

¶ 34 Arbitrator Rose also rejected the defendant's motion to reduce the amount of damages. Under the 2002 retainer agreement, as the prevailing party, the plaintiffs were entitled to the costs of arbitration. In addition to the $555,802.02, the plaintiffs were awarded $72,725.45 in costs from the defendant. . . .

. . . .

¶ 39 IV. Circuit Court Proceedings

¶ 40 The plaintiffs filed a verified petition to confirm the arbitration award. The defendant filed a verified answer and a verified counterclaim to vacate or modify the final award. In the counterclaim, the defendant alleged that arbitrator Rose exceeded his powers, refused to consider relevant evidence and refused to correct miscalculations in the amount of the damages awarded. The defendant sought a correction of the damage amounts.

¶ 41 The circuit court entered an order denying the defendant's counterclaim and confirming the arbitration award. The court assessed additional costs of $19,846.04 and entered judgment for the plaintiffs in the amount of $648,373.51.

Duemer v. Edward T. Joyce & Assocs., 995 N.E.2d 321, 325-28 (Ill. App. Ct. 2013). On August 9, 2013, the Illinois Appellate Court affirmed the Circuit Court's order, confirming the arbitrator's Final Award. Id. at 334. On November 27, 2013, the Supreme Court of Illinois denied the Joyce Firm's petition for leave to appeal. Duemer v. Edward T. Joyce & Assocs., P.C., 2 N.E.3d 1045 (Ill. 2013).

PDIC agreed to reimburse the Joyce Firm for its defense costs incurred in defending the Duermer claim, subject to a reservation of rights. However, upon entry of the Final Award,

PDIC denied that it had any further obligation to defend or indemnify the Joyce Firm because the matter is not covered under the Lawyers Professional Liability Policy.

**B. Procedural History**

On March 5, 2013, the Joyce Firm filed its Complaint for Declaratory Judgment and Other Relief in the Illinois state court. PDIC removed the litigation to federal court based on diversity jurisdiction. The Joyce Firm seeks coverage from PDIC for the $628,527.47 arbitration judgment entered against it and in favor of the Duemer claimants on August 8, 2011, the post-judgment interest that has accrued on the Final Award, and all attorneys' fees and costs incurred since PDIC denied coverage. Both parties now move for summary judgment. The cross-motions are fully briefed and before the Court.

## II. DISCUSSION

**A. Standard of Decision**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Garofalo v. Vill. of Hazel Crest, 754 F.3d 428, 430 (7th Cir. 2014). The Court reviews cross-motions for summary judgment, the same as any summary judgment motion, by construing all facts and drawing all reasonable inferences form those facts in the light most favorable to the nonmoving party. Garofalo, 754 F.3d at 430. However, because there is no genuine dispute as to the material facts in this insurance coverage case, the Court "need decide only whether either party is entitled to a judgment as a matter of law." Wis. Cent., Ltd. v. Shannon, 539 F.3d 751, 756 (7th Cir. 2008) (internal quotation marks and citation omitted); see also Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1079 (Ill. 1998) ("The construction of an insurance policy and a determination of the rights and obligations

9

thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." (citations omitted)).

**B. Estoppel**

As an initial matter, the Joyce Firm argues that PDIC should be estopped from raising any policy defenses to coverage. "Illinois's estoppel doctrine 'applies only where an insurer has breached its duty to defend.'" St. Paul Fire & Marine Ins. Co. v. Vill. of Franklin Park, 523 F.3d 754, 756 (7th Cir. 2008) (quoting Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust, 708 N.E.2d 1122, 1135 (Ill. 1999). An insurer "has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." Emp'rs Ins. of Wausau, 708 N.E.2d at 1134-35 (citations omitted). Here, PDIC issued a reservation of rights letter, and paid all defense costs incurred by the Joyce Firm to defend against the Duemer claim through the date of entry of the Final Award on August 26, 2011. According to the Joyce Firm, however, PDIC failed to reasonably defend the Joyce Firm during the underlying arbitration proceedings because PDIC failed to timely pay its attorneys' fees, and did so only after the Joyce Firm filed suit against PDIC to collect the amounts owed on the outstanding invoices. This argument, however, is waived because it is undeveloped and unsupported by pertinent authority. See, e.g., Hess v. Kanoski & Assocs., 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotation marks and citation omitted)).

## C. Policy Construction

Next, the Joyce Firm argues that the final arbitration award is covered under the terms of the Lawyers Professional Liability Policy and is not subject to any policy exclusions; and, therefore, PDIC has a duty to indemnify it. The parties agree that the Lawyers Professional Liability Policy at issue in this diversity action is governed by Illinois law. Under Illinois law, "[o]nce the insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify arises only if 'the insured's activity and the resulting loss or damage *actually* fall within the . . . policy's coverage.'" Travelers Ins. Co. v. Eljer Mfg., Inc., 757 N.E.2d 481, 492 (Ill. 2001) (quoting Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1221 (Ill. 1992)). "The duty to defend (and hence to reimburse for defense costs when the insurance company doesn't provide the lawyer for the insured) is broader than the duty to indemnify. . . . The duty is broader because it is triggered by arguable, as opposed to actual, coverage." Lockwood Int'l B.V. v. Volm Bag Co., 273 F.3d 741, 744 (7th Cir. 2001) (internal quotation marks and citation omitted); see also Outboard Marine Corp., 607 N.E.2d at 1221.

"The construction of an insurance policy is a question of law." Netherlands Ins. Co. v. Phusion Projects, Inc., 737 F.3d 1174, 1177 (7th Cir. 2013) (citing Am. States Ins. Co. v. Koloms, 687 N.E.2d 72, 75 (Ill. 1997)). "Because an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy." Founders Ins. Co. v. Munoz, 930 N.E.2d 999, 1003 (Ill. 2010) (citations omitted). In construing an insurance contract, the Court's primary role is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." Id. (citations omitted). It is well-established that "[i]f the language is unambiguous, the provision will be applied as written, unless it contravenes public policy." Id. (citations omitted). In addition, policy provisions which limit an insurer's

11

liability will be construed liberally in favor of coverage only where the provision is ambiguous. Id. (citations omitted). The parties' mere disagreement as to the meaning of a policy provision does not render it ambiguous; rather, the Court will find an ambiguity "where the policy language is susceptible to more than one reasonable interpretation." Id. (citations omitted). With these principles in mind, the Court determines whether the Joyce Firm's activity and resulting damage actually fall within the Lawyers Professional Liability Policy. See Eljer, 757 N.E.2d at 492.

The Lawyers Professional Liability Policy expressly limits the scope of coverage for "**damages** because of any **claim** or **claims**" made against it which "arise out of the rendering of or the failure to render **professional services**." PDIC's Local Rule 56.1(a)(3) Statement of Material Fact ¶ 4. Professional services are defined as services rendered in a "lawyer-client relationship <u>as a lawyer</u>." Id. ¶ 7 (emphasis added).

First, the parties disagree as to the type of conduct which constitutes a "lawyer-client relationship as a lawyer" within the meaning of the legal malpractice policy. PDIC argues that fee disputes between insureds and their clients, including claims that insureds have wrongfully withheld attorneys' fees and expenses from settlement proceeds, are not within the scope of this coverage. In support of this argument, PDIC relies on <u>Continental Casualty Co. v. Donald T. Bertucci, Ltd.</u>, 926 N.E.2d 833 (Ill. App. Ct. 2010). In Bertucci, the Illinois Appellate Court construed a similar insurance policy that provided coverage to underlying legal proceedings which alleged "both covered damages and an act or omission in the performance of legal services," i.e., "those services performed by an Insured for others <u>as a lawyer</u>." Id. at 839 (internal quotation marks omitted) (emphasis added). The Bertucci court held that the underlying lawsuit alleged neither requirement for coverage; and, therefore the insurer owed no

12

duty to defend the insured.  Id.  In the underlying lawsuit, the insured's former client brought claims against him based upon the retention of settlement funds and his subsequent representation about his right to retain them, alleging breach of contract, unjust enrichment, conversion, breach of fiduciary duty, fraud and violation of the Illinois statute which limits contingent legal fees in medical malpractice actions.  Id. at 837.  The former client sought: (1) restitution for unauthorized legal fees which Bertucci improperly retained from the proceeds of a medical malpractice settlement; and (2) consequential expenses arising therefrom, including statutory interest on the settlement proceeds, attorneys' fees, and punitive damages.  Id.

The Bertucci court focused on the true nature of the underlying claim—the improper retention of legal fees—rather than examine the legal theories advanced by the aggrieved client "such as the attorney's breach of a legal duty, violation of a statute, or disregard for an equitable duty."  Id.  The Bertucci court held that the alleged improper retention of legal fees constituted a "business practice independent of the lawyer-client relationship."  Id. at 842.  Put differently, the insured's retention of excessive attorney fees from a client's settlement proceeds did not draw upon his specialized knowledge and skill as a lawyer.  Id. at 844.  The Bertucci court emphasized that the underlying claim arose only after the lawyer had effectively and correctly performed the legal services for which he was retained.  Id. at 845.  For this reason, the Bertucci court concluded that the underlying litigation and related proceedings conducted by the Attorney Registration and Disciplinary Commission did not come within the terms of the policy.  Id. at 844-45, 847.

The Court agrees with the Joyce Firm that Bertucci is distinguishable.  The underlying arbitration goes well beyond the improper retention of legal fees; rather, the Joyce Firm's breach of fiduciary duty is inextricably tied to the lawyer-client relationship in the role of a lawyer.  The

13

arbitrator found that prior to the settlement achieved in this case, the Joyce Firm had failed to provide a full disclosure about the change in legal representation made in pursuing the San Francisco coverage litigation on behalf of the Duemer clients; that the Joyce Firm failed to advise its clients to seek independent counsel; that there was undue influence in the purported negotiation of a new fee agreement; and that the Joyce Firm failed to comply with its professional obligations by entering into a verbal agreement for a contingent fee. Indeed, the arbitrator found that in moving forward with the San Francisco litigation, the Joyce Firm was working to collect the 25% contingent fee interest it had as a creditor.

Under Illinois law, the fiduciary duty to disclose any actual or potential conflicts of interest constitutes a professional service that requires the use of legal knowledge or skill. Cont'l Cas. Co. v. Cuda, 715 N.E.2d 663, 668-69 (Ill. App. Ct. 1999); see also Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000) ("Generally, a claim against an attorney for breach of fiduciary duty falls under the rubric of professional malpractice." (citing Hanumadass v. Coffield, Ungaretti & Harris, 724 N.E.2d 14, 18 (1999))). What is more, in the underlying arbitration, the Deumer claimants alleged that the Joyce Firm was only authorized to settle the San Francisco lawsuit for $9,000,000. Yet, according to the Deumer claimants, the Joyce Firm entered into a settlement with EPS's insurers on behalf of its clients for $8,600,000, and notified them that the Joyce Firm would reduce its hourly fees by $400,000 to offset the lower settlement amount. Ultimately, the Joyce Firm failed to establish its authority to make the $8,600,000 settlement agreement on behalf of its clients. Duemer, 995 N.E.2d at 332. Accordingly, the Court finds that the Duemer claim made against the Joyce Firm arises from services rendered in a "lawyer-client relationship as a lawyer."

Next, the parties disagree on whether the Final Award constitutes "damage" within the scope of the Lawyers Professional Liability Policy. The term "damages" is defined as "monetary judgments, awards or settlements <u>unless otherwise excluded</u>." PDIC's Local Rule 56.1(a)(3) Statement of Material Fact ¶ 6 (emphasis added). The Lawyers Professional Liability Policy excludes, among other things, "any **claim** for legal fees, costs or disbursements paid or owed to you," id. ¶ 11, and "any **claim** for fines, sanctions, penalties, punitive **damages** or any **damages** resulting from the multiplication of compensatory **damages**," id. ¶ 10.

PDIC argues that both exclusions preclude coverage. Pursuant to Exclusion (p), the Lawyers Professional Liability Policy does not apply to claims for legal fees or costs. For the same reasons discussed above, PDIC's argument under Exclusion (p) fails as a matter of law. The Duemer claim is not a run of the mill dispute over legal fees and costs. The Joyce Firm's activity—failure to make proper disclosures and provide necessary legal advice, including the impropriety in making a settlement agreement on behalf of its clients below the authorized amount—goes beyond a mere fee dispute. Exclusion (p) therefore does not apply.

With respect to Exclusion (o), which excludes claims for sanctions, PDIC argues that because the judgment against the Joyce Firm was expressly awarded as a sanction, the Duemer claim is not covered. In the underlying arbitration, the Duemer claimants sought damages for breach of contract and equitable disgorgement based upon the Joyce Firm's alleged failure to finish its performance under the 2002 Retainer Agreement, the hourly fees billed to them by the Joyce Firm, as well as the additional legal fees it incurred with Morgan Lewis/Reed Smith. The arbitrator found that the 2002 Retainer Agreement had ended when the San Francisco litigation began; and, therefore there was no breach of contract. However, the arbitrator found that there was not a new retainer agreement in place because of the Joyce Firm's improper conduct. As a

15

sanction, the arbitrator awarded $405,674.87 for the contingent hourly fees charged and paid to the Joyce Firm and an additional $150,127.15, which represents the Joyce Firm's 25% share of the fees paid to Morgan Lewis/Reed Smith. Duemer, 995 N.E.2d at 326.

The Joyce Firm argues that, although the arbitrator used the term "sanction" in the Final Award, he really intended to award only damages in the form of disgorgement based upon its finding that the Joyce Firm did not act "with intent to violate the law or the professional rules of conduct." Decl. of Arthur Aufmann in Supp. of Mot. for Summ. J. Ex. C, at 17. However, the Circuit Court of Cook County confirmed the Final Award, which included the arbitrators' stated imposition of sanctions. Moreover, the Illinois Appellate Court affirmed the order, and expressly and repeatedly referred to the damages award as a sanction. Ultimately, the Supreme Court of Illinois denied the Joyce Firm's petition for leave to appeal. The Joyce Firm's argument that the sanction imposed by the arbitrator was not actually a sanction is fundamentally flawed in light of Illinois state court proceedings; and, is therefore rejected. Because the damages awarded to the Duemer claimants are sanctions, and the policy specifically excludes such damages, PDIC has no duty to indemnify the Joyce Firm. Where, as here, "the covered claims fall out of the case through settlement or otherwise, the insurer's duty to defend his insured ceases." Lockwood Int'l B.V., 273 F.3d at 744 (citations omitted). The Court need not address the parties remaining arguments regarding coverage.

## III. CONCLUSION

For the foregoing reasons, PDIC's motion is granted, and the Joyce Firm's motion is denied. Summary judgment is entered in favor of PDIC. PDIC has no duty to indemnify the Joyce Firm on the Duemer claim. Additionally, PDIC's duty to defend ceased when the arbitrator awarded sanctions as relief for the Joyce Firm's breach of fiduciary duty.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 30, 2014